UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CANDIDO TORRES, :
    Plaintiff, :
     :
v. : Case No. 3:15cv1558(VLB)
     :
ROBERT MCGRATH, ET AL., : May 3, 2016
    Defendants. :

## INITIAL REVIEW ORDER

The Plaintiff, Candido Torres ("Torres"), is currently confined at Garner Correctional Institution in Newtown, Connecticut ("Garner"). He has filed a complaint pursuant 42 U.S.C. § 1983 naming Unit Manager Robert McGrath ("McGrath"), Lieutenant James Brown ("Brown"), Counselor Supervisor Osden ("Osden"), Director Kim Lacasse ("Lacasse"), Lieutenant McFarland ("Mcfarland"), the New Hampshire Department of Corrections and the State of Connecticut Department of Correction as defendants. For the reasons set forth below, the Complaint is dismissed in part.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

1

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The plaintiff asserts that Connecticut Department of Correction officials transferred him to the New Hampshire Department of Corrections to serve his sentence. The Plaintiff claims that during his confinement in Connecticut, he had renounced his membership in the Latin Kings gang. Upon being transferred to New Hampshire, the Plaintiff became inducted into the Neta prison gang.

In December 2014, the Plaintiff was incarcerated in the New Hampshire State Prison for Men in Concord, New Hampshire ("NH Concord"). In late December 2014, the Plaintiff became upset about not being permitted to speak Spanish freely, and engaged in an argument with correctional staff. Shortly after the argument,

the warden transferred the Plaintiff to the Northern New Hampshire Correctional Facility in Berlin, New Hampshire ("NNH Berlin"). The Plaintiff claims that his girlfriend learned from New Hampshire Population Management and Classification Director Lacasse that Plaintiff had been transferred in retaliation for his complaints about staff refusing to permit him to freely speak Spanish. The Plaintiff later learned that Unit Manager McGrath was also responsible for the decision to transfer him to Berlin.

The Plaintiff married his girlfriend on January 15, 2015. His wife made him choose between her and his membership in a prison gang. Between February and May 2015, the Plaintiff and his wife wrote many letters to Counselor Supervisor Jaclyn Osden, who works in the Sentence Calculation and Interstate Management Office of the Connecticut Department of Correction. The Plaintiff informed Supervisor Osden that he sought to renounce his membership in the Neta prison gang and that he and his wife were very concerned about potential reprisals by members of the prison gang after he renounced his membership in the gang. He made it clear that he feared for his safety.

On March 13, 2015, the Plaintiff was cut in the back of the head by an inmate who was part of a gang. Prison officials placed him in protective custody. Despite the Plaintiff's concerns about his safety, Counselor Supervisor Osden informed him that due to the fact that the cut was superficial, he would not be transferred back to Connecticut.

On March 19, 2015, shortly after being transferred to general population, an inmate assaulted the Plaintiff in the bathroom.  The Plaintiff immediately contacted prison staff, including Lieutenant McFarland.   Prison staff did not report the incident.  Prison officials, including Lieutenant McFarland, did not investigate the incident.

In April 2015, the Plaintiff pled guilty to a disciplinary ticket charging him with intoxication.  He received multiple sanctions.   Counselor Supervisor Osden informed the Plaintiff that he would not be able to return to Connecticut due to a disciplinary infraction that he had received in August 2014.   To be eligible to transfer back to Connecticut, prison officials required the Plaintiff to be disciplinary report-free for one year.

On April 18, 2015, the plaintiff contacted Lieutenant McFarland and asked to be placed on in-cell meals because he feared for his safety.   He claimed that the Neta gang had placed a hit on him.  That same day, the Plaintiff contacted Director Lacasse and sought to be separated from certain inmates who were members of the Neta gang.  Director Lacasse responded that she would investigate the information provided by the plaintiff to determine whether separation orders were warranted.   Three days later, on April 21, 2015, Lieutenant McFarland denied the Plaintiff's in-cell meal request.

On May 5, 2015, due to threats against his safety and the theft of his electronic game console, prison officials placed the Plaintiff in protective custody.  The Plaintiff wrote to Lieutenant McFarland and Director Lacasse and informed

4

them that he feared for his safety and was emotionally distraught because he could not visit his mother who was chronically ill.

On May 11, 2015, he complained about having suicidal thoughts and feeling depressed. Mental health staff offered the Plaintiff an anti-depressant. On May 12, 2015, the Plaintiff informed Counselor Supervisor Osden that he would be going on a hunger strike in an effort to remain in protective custody.

On May 14, 2015, the Plaintiff tried to commit suicide by cutting his right wrist. Mental health staff placed the Plaintiff on suicide watch in an observation cell and checked him every fifteen minutes. Prison staff also transported him to a hospital to have his wrist checked. The Plaintiff remained on suicide watch until May 27, 2015.

On May 28, 2015, prison officials at NNH Berlin transferred the plaintiff back to NH Concord. On May 29, 2015, prison officials at NH Concord transferred the Plaintiff back to a prison facility in Connecticut. The Plaintiff subsequently received medical and mental health treatment at Garner.

I.      **New Hampshire and Connecticut Departments of Corrections**

To state a claim under section 1983, the plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a constitutionally or federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). Neither the Connecticut Department of Correction nor the New Hampshire Department of Corrections is a person subject to suit under 42 U.S.C. § 1983.

Like other state agencies, Departments of Correction are not persons within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (dismissing claims against Connecticut Department of Corrections because it "is not a 'person' within the meaning of § 1983") (citations omitted). Accordingly, all section 1983 claims against the Connecticut Department of Correction and the New Hampshire Department of Corrections are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

## II.     Lieutenant James Brown

The Plaintiff does not mention Lieutenant Brown other than in the description of the parties. As such, he has not alleged that Lieutenant Brown violated his constitutionally or federally protected rights. All claims against defendant Brown are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## III.    Fifth and Fourteenth Amendments

In the introductory paragraph of the Complaint, the Plaintiff asserts that he seeks relief for violations of his Fifth, Eighth and Fourteenth Amendment rights. In the relief section of the Complaint, the Plaintiff asserts that the defendants were deliberately indifferent to his safety in violation of the Eight and Fourteenth Amendments. In addition, the Plaintiff contends that the defendants did not provide him with an opportunity to address his safety concerns which violated his

right to the redress of grievances and due process in violation of the Fifth and Fourteenth Amendments.

### A. Fifth Amendment

The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009) (holding that any due process claim against the city was "properly brought under the Fourteenth Amendment, not the Fifth Amendment"). The Plaintiff has not alleged that a federal official violated his Fifth Amendment rights. Nor has he otherwise alleged facts to state a claim under the Fifth Amendment. Accordingly, the Fifth Amendment claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Fourteenth Amendment Procedural Due Process Claims

The Plaintiff claims that the defendants did not provide him with the opportunity to address his safety concerns and violated his right to the redress of grievances under the Fourteenth Amendment. There are no facts to support this allegation. Rather, the Complaint includes many allegations regarding the written and verbal complaints about the conditions of confinement made by the Plaintiff and his wife to Defendants Osden, Lacasse, and McFarland. In addition, the Plaintiff states that he exhausted his available administrative remedies prior to filing this action. Thus, the Plaintiff has not asserted facts to suggest that he

could not file grievances regarding his safety.  *See Wagnoon v. Gatson*, Nos. 00 Civ. 3722 (AGS), 99 Civ. 5872 (AGS), 2001 WL 709276 at *7 (S.D.N.Y. Jun. 25, 2001) (dismissing Fourteenth Amendment procedural due process claim where plaintiff "set forth no facts suggesting that he was denied a liberty or property interest as a result of the grievance procedure in question so as to trigger a procedural due process violation").

To the extent that the Plaintiff is claiming that the grievances were not properly processed or were not answered, such a claim is not cognizable in a section 1983 action.  "It is well established ... that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (collecting cases).  Thus, the alleged failure of prison officials to respond to or process inmate requests or grievances in a timely manner does not violate any constitutionally or federally protected rights of the plaintiff.  *See Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures.") *Pocevic v. Tung*, No. 3:04CV1067 (CFD), 2006 WL 680459, at *8 (D. Conn. Mar. 14, 2006) (stating that the "court can discern no federally or constitutionally protected right that was violated by defendant['s] failure to comply

with the institutional procedures regarding the timing of his response to [plaintiff's] level 2 grievance"). Accordingly, any claims by the Plaintiff regarding the failure of the defendants to provide him with the opportunity to file grievances or complaints or the failure of the defendants to properly process or timely respond to his grievances are dismissed. See 28 U.S.C. § 1915A(b)(1).

    C.    <u>Fourteenth Amendment Substantive Due Process Claims</u>

The Plaintiff also asserts that the defendants violated his Fourteenth and Eighth Amendment rights because they failed to provide him with safe conditions of confinement. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that if a particular amendment "provides an explicit textual source of constitutional protection against" a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 395. The Plaintiff claims that the defendants violated his rights under the Eighth and Fourteenth Amendments by conduct that constituted deliberate indifference to his safety. The Eighth Amendment provides specific protection against conditions of confinement that are unsafe. See *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989) (Prison officials are required to provide for "inmates' basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety"). Because the Plaintiff's deliberate indifference claim is covered by the Eighth Amendment, the Fourteenth Amendment due process claim is duplicative and is dismissed. See *Roman v. Velleca*, No. 11-CV-1867(VLB), 2012 WL 4445475, at *10 (D. Conn. Sept.

25, 2012) ("[S]ubstantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources."). For all of the reasons set forth above, the Fourteenth Amendment due process claims are dismissed. See 28 U.S.C. § 1915A(b)(1).

IV.     State Law Claims

The Plaintiff generally asserts that he seeks relief for violations of article I, section 9 of the Connecticut Constitution. Section 9 provides "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." He does not allege facts to state a claim that the defendants violated his rights under this section of article I of the Connecticut Constitution. Thus, the claims asserted pursuant to article I, section 9 of the Connecticut Constitution are dismissed. See 28 U.S.C. § 1915A(b)(1).

The Complaint also includes allegations that the defendants' conduct constituted negligence. This state law claim is barred by the doctrines of sovereign and statutory immunity. Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003). Furthermore, "[a]ny person having a complaint for [] damage or injury" caused by wanton, reckless or malicious conduct must "present ... [the] claim against the

state" to the State Claims Commissioner who may authorize suit against the state or state official.  Conn. Gen. Stat. §§ 4-160, 4-165(a).  When filing a lawsuit, the Plaintiff must allege that he or she sought "authorization and the date on which it was granted . . . ." Conn. Gen. Stat. § 4-160(c).  The Plaintiff has not asserted that he filed a claim with the State Claims Commissioner or that he received the required authorization to file suit against the State and its officials.  Accordingly, the negligence claims against the defendants in their individual capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-165 and are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

"It is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit."  *First Union Nat'l Bank v. Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 293-94, 869 A.2d 1193, 1197 (2005) (citation omitted).  This immunity is applicable to both lawsuits against a state as well as to lawsuits against a state official in his or her official capacity.  *See Miller*, 265 Conn. at 313; 828 A.2d at 558 ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.") (internal quotation marks and citation omitted).  There is no allegation that the defendants in their official capacities waived their sovereign immunity to be sued as to any negligence claims.   The negligence claims asserted against the defendants in their official capacities are dismissed as barred by sovereign immunity.  *See* 28 U.S.C. § 1915A(b)(2).

## V.     Remaining Claims

After reviewing the Complaint, the Court construes the Plaintiff's allegation that defendants Lacasse and McGrath punished him for voicing his concerns about the prohibition on freely speaking Spanish by transferring him to another prison facility as a claim of retaliation for exercising his First Amendment right to redress grievances.   The Plaintiff's First Amendment retaliation claim will proceed against defendants Lacasse and McGrath in their individual capacities.

In addition, the court concludes that the Plaintiff has stated plausible claims of deliberate indifference to safety and/or failure to protect against defendants Lacasse, McGrath, Osden and McFarland.  Thus, the Eighth Amendment claims will proceed against defendants Lacasse, McGrath, Osden and McFarland in their individual capacities.

To the extent that the plaintiff seeks monetary damages from defendants Lacasse, McGrath, Osden and McFarland in their official capacities for violations of his First and Eighth Amendment rights, those claims are barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). All claims for monetary damages against defendants Lacasse, McGrath, Osden and McFarland in their official capacities for violations of the plaintiff's First and Eighth Amendment rights are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff also seeks injunctive relief pertaining to the conditions of confinement in Connecticut against defendant Osden.  Thus, the First and Eighth Amendment claims will proceed as to defendant Osden in her official capacity as well.

ORDERS

The court enters the following orders:

(1)     The Fifth and Fourteenth Amendment claims and all other federal claims against defendants Brown, the State of Connecticut Department of Correction and the State of New Hampshire Department of Corrections are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).  The state law claims against all defendants in their individual and official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and (2).  All federal claims for monetary damages against Lacasse, McGrath, Osden and McFarland in their official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

The Eighth Amendment claims will proceed against defendants Lacasse, McGrath, Osden and McFarland in their individual capacities and against defendant Osden in her official capacity.  The First Amendment retaliation claim will proceed against defendants Lacasse and McGrath in their individual capacities and against defendant Osden in her official capacity.

(2)     Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendant

Osden in her official capacity by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one days of the date of this order, the Clerk shall ascertain from the State of Connecticut Department of Correction Office of Legal Affairs the current work address for Counselor Supervisor Jaclyn Osden and mail a waiver of service of process request packet to her at her current work address. In addition, the Clerk shall mail a waiver of service of process request packet to Unit Manager Robert McGrath at the New Hampshire State Prison for Men, 281 North State Street, P.O. Box 14, Concord, New Hampshire, 03302, to Lieutenant McFarland at the Northern New Hampshire Correctional Facility, 138 East Milan Road, Berlin, New Hampshire, 03570 and Population Management and Classification Director Kim Lacasse at the New Hampshire Department of Corrections, 105 Pleasant Street, P.O. Box 1806, Concord, New Hampshire 03302. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of all the requests.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Lacasse, McGrath, Osden and McFarland shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or

deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

    (4)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

    (5)    All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

SO ORDERED at Hartford, Connecticut this 3rd day of May, 2016.

        /s/
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE