UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CANDIDO TORRES,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Civil No. 3:15 cv 1558(VLB) |
| ROBERT MCGRATH, et al.<br>    Defendants. | :<br>:<br>: |

## RULING ON MOTION TO DISMISS

The plaintiff, Candido Torres, is currently confined in Connecticut. He initiated this action by filing a complaint against Unit Manager Robert McGrath, Lieutenant James Brown, Counselor Supervisor Osden, Director Kim Lacasse, Lieutenant McFarland, the New Hampshire Department of Corrections and the State of Connecticut Department of Correction.

On May 3, 2016, the court dismissed the Fifth and Fourteenth Amendment claims and all other federal claims against Brown, the State of Connecticut Department of Correction and the State of New Hampshire Department of Corrections pursuant to 28 U.S.C. § 1915A(b)(1), dismissed the state law claims against all defendants in their individual and official capacities pursuant to 28 U.S.C. § 1915A(b)(1) and (2), and dismissed all federal claims for monetary damages against Lacasse, McGrath, Osden and McFarland in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2). The court concluded that the Eighth Amendment claims would proceed against Lacasse, McGrath, Osden and

1

McFarland in their individual capacities and against Osden in her official capacity and the First Amendment retaliation claim would proceed against Lacasse and McGrath in their individual capacities and against Osden in her official capacity.

Pending before the court is a motion to dismiss filed by Lacasse, McFarland and McGrath, employees of the New Hampshire Department of Corrections for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  For the reasons discussed below, the Motion to Dismiss is granted.

I.     Factual Allegations

The complaint included the following allegations:  The plaintiff was convicted in the State of Connecticut.  During his confinement in the Connecticut prison system, he renounced his membership in the gang called The Latin Kings. At some point, Connecticut Department of Correction officials transferred the plaintiff to the New Hampshire Department of Corrections to serve his sentence. After his transfer to a New Hampshire prison, the plaintiff became inducted into the Neta prison gang.

In December 2014, the plaintiff was confined at the New Hampshire State Prison for Men in Concord, New Hampshire ("NH Concord").  In late December 2014, the plaintiff became upset about not being permitted to speak Spanish freely and engaged in an argument with correctional staff.  Shortly after the argument, the warden transferred the plaintiff to the Northern New Hampshire Correctional Facility in Berlin, New Hampshire ("NH Berlin").  The plaintiff claims

that his girlfriend learned from New Hampshire Population Management and Classification Director Lacasse that he had been transferred in retaliation for his complaints about staff refusing to permit him to freely speak Spanish. The plaintiff later learned that Unit Manager McGrath was also responsible for the decision to transfer him to Berlin.

The plaintiff married his girlfriend on January 15, 2015. His wife made him choose between her and his membership in a prison gang.

Between February and May 2015, the plaintiff and his wife wrote many letters to Counselor Supervisor Jaclyn Osden, who works in the Sentence Calculation and Interstate Management Office of the Connecticut Department of Correction. The plaintiff informed Supervisor Osden that he sought to renounce his membership in the Neta prison gang and that he and his wife were very concerned about potential reprisals by members of the prison gang after he renounced his membership in the gang. He made it clear that he feared for his safety.

On March 13, 2015, the plaintiff was cut in the back of the head by an inmate who was part of an unidentified gang. Prison officials placed him in protective custody. Despite the plaintiff's concerns about his safety, Counselor Supervisor Osden informed him that due to the fact that the cut was superficial, he would not be transferred back to Connecticut.

On March 19, 2015, shortly after being transferred to general population, an inmate assaulted the plaintiff in the bathroom. The plaintiff immediately

contacted prison staff, including Lieutenant McFarland. Prison staff did not report the incident. Prison officials, including Lieutenant McFarland, did not investigate the incident.

In April 2015, the plaintiff pleaded guilty to a disciplinary ticket charging him with intoxication. He received multiple sanctions. Counselor Supervisor Osden informed the plaintiff that he would not be able to return to Connecticut due to a disciplinary infraction that he had received in August 2014. To be eligible for transfer back to Connecticut, prison officials required the plaintiff to be disciplinary report-free for one year.

On April 18, 2015, the plaintiff contacted Lieutenant McFarland and asked to be placed on in-cell meals because he feared for his safety. He claimed that the Neta gang had placed a hit on him. On April 21, 2015, Lieutenant McFarland denied the plaintiff's request.

On April 18, 2015, the plaintiff contacted Director Lacasse and sought to be separated from certain inmates who were members of the Neta gang. Director Lacasse responded that she would investigate the information provided by the plaintiff to determine whether separation orders were warranted.

On May 5, 2015, due to threats against his safety and the theft of his electronic game console, prison officials placed the plaintiff in protective custody. The plaintiff wrote to Lieutenant McFarland and Director Lacasse and informed them that he feared for his safety and was emotionally distraught because he could not visit his mother who was chronically ill.

On May 11, 2015, he complained about having suicidal thoughts and feeling depressed. Mental health staff offered the plaintiff an anti-depressant. On May 12, 2015, the plaintiff informed Counselor Supervisor Osden that he would be going on a hunger strike in an effort to remain in protective custody.

On May 14, 2015, the plaintiff tried to commit suicide by cutting his right wrist. Mental health staff placed the plaintiff on suicide watch in an observation cell and checked him every fifteen minutes. Prison staff also transported him to a hospital to have his wrist checked. The plaintiff remained on suicide watch until May 27, 2015.

On May 28, 2015, prison officials at NH Berlin transferred the plaintiff back to NH Concord. On May 29, 2015, prison officials at NH Concord transferred the plaintiff back to a prison facility in Connecticut. The plaintiff subsequently received medical and mental health treatment at Garner.

II.     Standard of Review

When a defendant moves to dismiss a complaint pursuant to Rule 12(b)(2), Fed. R. Civ. P. on the ground that the court lacks personal jurisdiction over him, it is plaintiff's burden to demonstrate that the court has jurisdiction over the defendant. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). If the motion is asserted before any discovery is undertaken, a plaintiff only needs to allege facts constituting a prima facie showing of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). A plaintiff may make the requisite factual showing through his or her "own affidavits and supporting

materials" which the court may consider and review. *Whitaker*, 261 F.3d at 208 (citations and internal quotation marks omitted). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor [.]" *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (citations omitted).

In assessing whether personal jurisdiction may be exercised over a defendant who is not a citizen of the forum state in a case involving a federal question, the court "must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). The Court first looks to the forum state's long-arm statute. *See id.* (citations omitted). If the Court concludes that the state's long-arm statute authorizes the exercise of jurisdiction over the defendant, the Court must then decide whether the statute satisfies the "minimum contacts" and the "reasonableness" requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.* at 164 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Connecticut's long-arm statute, provides that a court may exercise jurisdiction over a nonresident defendant who "in person or through an agent":

(1) Transacts any business within the state;
(2) commits a tortious act within the state . . .;
(3) commits a tortious act outside the state causing injury to a person or property within the state . . . if such person or agent
(A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
(4) owns, uses or possesses real property situated within the state;

>   or
> (5) uses a computer . . . or a computer network . . . located within the state.

Conn. Gen. Stat. § 52-59b(a).

III.    Discussion

Defendants Lacasse, McFarland and McGrath aver that they are residents of New Hampshire and are all employed in New Hampshire by the New Hampshire Department of Corrections.  [Mot. Dismiss, Dkt. Nos. 19-2 through 19-4.]  They have no direct personal or business contacts with the State of Connecticut.  *Id.*  Furthermore, there are no allegations that Defendants Lacasse, McFarland, or McGrath committed a tortious act within Connecticut, committed a tortious act outside of Connecticut that caused an injury to a person within Connecticut, used a computer or computer network located in Connecticut or owned or used property in Connecticut.  In addition, neither the alleged unconstitutional conditions of confinement nor the alleged retaliatory conduct occurred in Connecticut, but rather in New Hampshire.

The plaintiff has not responded to the motion to dismiss.  Neither the allegations of the Complaint nor anything else in the record demonstrate that Connecticut General Statutes § 52-59b(a) authorizes the exercise of personal jurisdiction over Defendants Lacasse, McFarland and McGrath in this action.[1]

IV.    Conclusion

---

[1]  Because the Court has concluded that the plaintiff has alleged no basis upon which this Court may acquire personal jurisdiction, the court need not reach the question of whether Connecticut's long arm statute violates the Due Process Clause of the Fourteenth Amendment.

**The Motion to Dismiss [Dkt. No. 19] filed by Defendants Lacasse, McFarland and McGrath is GRANTED on the ground that the Court lacks personal jurisdiction over them.  The claims against Defendants Lacasse, McFarland, and McGrath are DISMISSED.**

**The Eighth and First Amendment claims will proceed against Osden in her individual and official capacities.**

**SO ORDERED this 9th day of January 2017, at Hartford, Connecticut.**

```
              /s/                    
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE
```