UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANDIDO TORRES,<br>    Plaintiff, | : <br> : <br> : | CASE NO. 3:15-cv-1558 (VLB) |
| v. | : <br> : | |
| ROBERT MCGRATH, et al.,<br>    Defendants. | : <br> : <br> : <br> : | July 31, 2017 |

## RULING ON DEFENDANT JACLYN OSDEN'S MOTION TO DISMISS [No. 29]

On October 26, 2015, the plaintiff, Candido Torres, commenced a civil action pursuant to 42 U.S.C. § 1983 against several employees of the New Hampshire and Connecticut Departments of Correction in their individual and official capacities, alleging violations of his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendment [No. 1]. He also raised claims of negligence against all defendants, and requested declaratory, injunctive and compensatory relief. Thereafter, this Court dismissed all of the plaintiff's claims except those alleging violations of his First and Eighth Amendment rights by defendant Jaclyn Osden ("Osden"), a Counselor Supervisor for the Connecticut Department of Correction, in her individual and official capacities [Nos. 9, 30]. Osden now moves to dismiss the plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of qualified immunity and failure to state a claim upon which relief could be granted [No. 29]. The plaintiff has not responded to Osden's

1

motion.[1]  For the reasons that follow, Osden's motion is granted in part and denied in part.

I. **Standard of Review**

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Although Rule 8 does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  A complaint that offers mere conclusory statements without factual support will not suffice to withstand dismissal.  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that the plaintiff is entitled to relief.  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

---

[1] The deadline for the plaintiff to respond to Osden's motion to dismiss was January 18, 2017.  *See* ECF No. 29.

When reviewing a motion to dismiss, the court must accept as true all of the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Ashcroft*, 556 U.S. at 678; *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). This principle does not, however, apply to the legal conclusions that the plaintiff draws in his complaint. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp.*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.

"Where . . . the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nevertheless, a *pro se* plaintiff's complaint must state a plausible claim for relief. *Id.*

II. **Facts**

This Court articulated the following facts in its Initial Review Order [No. 9] on May 3, 2016:

> The plaintiff asserts that Connecticut Department of Correction officials transferred him to the New Hampshire Department of Corrections to serve his sentence. The Plaintiff claims that during his confinement in Connecticut, he had renounced his membership in the Latin Kings gang. Upon being transferred to New Hampshire, the Plaintiff became inducted into the Neta prison gang.
>
> In December 2014, the Plaintiff was incarcerated in the New Hampshire State Prison for Men in Concord, New Hampshire ("NH Concord"). In late December 2014, the Plaintiff became upset about not being

3

permitted to speak Spanish freely, and engaged in an argument with correctional staff. Shortly after the argument, the warden transferred the Plaintiff to the Northern New Hampshire Correctional Facility in Berlin, New Hampshire ("NNH Berlin"). The Plaintiff claims that his girlfriend learned from New Hampshire Population Management and Classification Director Lacasse that Plaintiff had been transferred in retaliation for his complaints about staff refusing to permit him to freely speak Spanish. The Plaintiff later learned that Unit Manager McGrath was also responsible for the decision to transfer him to Berlin.

The Plaintiff married his girlfriend on January 15, 2015. His wife made him choose between her and his membership in a prison gang. Between February and May 2015, the Plaintiff and his wife wrote many letters to [Osden], who works in the Sentence Calculation and Interstate Management Office of the Connecticut Department of Correction. The Plaintiff informed [Osden] that he sought to renounce his membership in the Neta prison gang and that he and his wife were very concerned about potential reprisals by members of the prison gang after he renounced his membership in the gang. He made it clear that he feared for his safety.

On March 13, 2015, the Plaintiff was cut in the back of the head by an inmate who was part of a gang. Prison officials placed him in protective custody. Despite the Plaintiff's concerns about his safety, [Osden] informed him that due to the fact that the cut was superficial, he would not be transferred back to Connecticut.

On March 19, 2015, shortly after being transferred to general population, an inmate assaulted the Plaintiff in the bathroom. The Plaintiff immediately contacted prison staff, including Lieutenant McFarland. Prison staff did not report the incident. Prison officials, including Lieutenant McFarland, did not investigate the incident.

In April 2015, the Plaintiff pled guilty to a disciplinary ticket charging him with intoxication. He received multiple sanctions. [Osden] informed the Plaintiff that he would not be able to return to Connecticut due to a disciplinary infraction that he had received in August 2014. To be eligible to transfer back to Connecticut, prison officials required the Plaintiff to be disciplinary report-free for one year.

On April 18, 2015, the plaintiff contacted Lieutenant McFarland and asked to be placed on in-cell meals because he feared for his safety. He claimed that the Neta gang had placed a hit on him. That same day, the Plaintiff contacted Director Lacasse and sought to be separated

from certain inmates who were members of the Neta gang. Director Lacasse responded that she would investigate the information provided by the plaintiff to determine whether separation orders were warranted. Three days later, on April 21, 2015, Lieutenant McFarland denied the Plaintiff's in-cell meal request.

On May 5, 2015, due to threats against his safety and the theft of his electronic game console, prison officials placed the Plaintiff in protective custody. The Plaintiff wrote to Lieutenant McFarland and Director Lacasse and informed them that he feared for his safety and was emotionally distraught because he could not visit his mother who was chronically ill.

On May 11, 2015, he complained about having suicidal thoughts and feeling depressed. Mental health staff offered the Plaintiff an anti-depressant. On May 12, 2015, the Plaintiff informed [Osden] that he would be going on a hunger strike in an effort to remain in protective custody.

On May 14, 2015, the Plaintiff tried to commit suicide by cutting his right wrist. Mental health staff placed the Plaintiff on suicide watch in an observation cell and checked him every fifteen minutes. Prison staff also transported him to a hospital to have his wrist checked. The Plaintiff remained on suicide watch until May 27, 2015.

On May 28, 2015, prison officials at NNH Berlin transferred the plaintiff back to NH Concord. On May 29, 2015, prison officials at NH Concord transferred the Plaintiff back to a prison facility in Connecticut. The Plaintiff subsequently received medical and mental health treatment at Garner.

After reviewing the factual allegations raised in the complaint, this Court rendered the following conclusions regarding the plaintiff's First and Eighth Amendment claims:

> [T]he Court construes the Plaintiff's allegation that defendants Lacasse and McGrath punished him for voicing his concerns about the prohibition on freely speaking Spanish by transferring him to another prison facility as a claim of retaliation for exercising his First Amendment right to redress grievances. The Plaintiff's First Amendment retaliation claim will proceed against defendants Lacasse and McGrath in their individual capacities.

5

> In addition, the court concludes that the Plaintiff has stated plausible claims of deliberate indifference to safety and/or failure to protect against defendants Lacasse, McGrath, Osden and McFarland. Thus, the Eighth Amendment claims will proceed against defendants Lacasse, McGrath, Osden and McFarland in their individual capacities.
>
> * * *
>
> The plaintiff also seeks injunctive relief pertaining to the conditions of confinement in Connecticut against defendant Osden. Thus, the First and Eighth Amendment claims will proceed as to defendant Osden in her official capacity as well.

On January 9, 2017, this Court dismissed all claims against all defendants except for Osden [No. 30]. The Court ordered that the plaintiff's First and Eighth Amendment claims will proceed against Osden in her individual and official capacities.

### III. Discussion

Osden argues that the plaintiff's First and Eighth Amendment claims should be dismissed on the grounds of qualified immunity and failure to state a claim upon which relief could be granted. First, with respect to both constitutional claims, Osden argues that she is entitled to qualified immunity. [Dkt. 29 (Osden's Motion to Dismiss) ("MTD") at 6.] Alternatively, Osden argues that the First Amendment allegations raised in the complaint were directed at other defendants in the case, particularly New Hampshire Correctional staff, but not Osden. *Id.* at 7. With respect to the Eighth Amendment claims of deliberate indifference to safety and/or failure to protect, Osden argues that the plaintiff failed to sufficiently allege actual knowledge on the part of Osden that the plaintiff faced a substantial risk of serious harm. *Id.* at 13-14. Finally, Osden argues that the plaintiff's claims for injunctive relief, specifically that he be transferred to a

6

Connecticut correctional facility, are now moot because the plaintiff asserts in his complaint that he was so transferred on May 29, 2015. *Id.* at 14-15. The Court will address each of these arguments in turn.

A. <u>Qualified Immunity</u>

"The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable, and reduces the general costs of subjecting officials to the risks of trial . . . ." *Connell* v. *Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (quoting *Michell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed.2d 411 (1985)). "A public official, when sued in his individual capacity, is entitled to qualified immunity from a claim for damages (1) if the conduct attributed to him was not prohibited by federal law . . . or (2) where that official action was so prohibited, if the plaintiff's right not to be subjected to such action was not 'clearly established' at the time it was taken . . . ." *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987)). "A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)). Although there need not be case law directly on point in order for a right to be considered "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed.2d 1149 (2011); *see also McGowan v. United States*, 825

7

F.3d 118, 124 (2d Cir. 2016) (court may grant qualified immunity on ground that purported right was not clearly established by prior case law without resolving more difficult question of whether purported right exists at all).

Qualified immunity is an affirmative defense which more often than not is asserted in a defendant's answer to a complaint and does not support a motion to dismiss pursuant to Rule 12(b)(6). *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). However, the Second Circuit has permitted the qualified immunity defense to be successfully asserted in a 12(b)(6) motion if it is based on facts which appear on the face of the complaint and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). In order for a defendant to prevail on a qualified immunity defense in a 12(b)(6) motion as a opposed to one raised in a motion for summary judgment, she must satisfy this more stringent standard. *Id.*

Osden's motion to dismiss does not explain why she is entitled to qualified immunity on the plaintiff's First and Eighth Amendment claims. She simply quotes *Connell* for the proposition that a defendant is entitled to qualified immunity "if the allegations of the complaint fail to state a claim of violation of clearly established law." MTD at 6 (quoting *Connell*, 153 F.3d at 80). Moreover, the facts alleged in the complaint do not suffice to satisfy the more stringent standard in order for Osden to prevail on a qualified immunity defense in a 12(b)(6) motion. This Court in its Initial Review Order ruled that the plaintiff stated a plausible retaliation claim that the defendants punished him for voicing

his concerns about not being able to communicate in Spanish by transferring him to another facility. Initial Revew Order [No. 9] ("IRO") at 12. The Second Circuit has rejected qualified immunity defenses raised in motions to dismiss in opposition to First Amendment retaliation claims because such claims require an improper retaliatory motive on the part of the defendant, and "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Washington v. Gonyea*, 538 Fed. Appx. 23, 27 (2d Cir. 2013) (quoting *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001)).

With respect to the plaintiff's Eighth Amendment claim, it does not appear from the face of the complaint, alone, that Osden is entitled to qualified immunity. Based on its interpretation of the allegations as stated in the Initial Review Order, this Court cannot conclude that the plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." *McKenna*, 386 F.3d at 435. For the foregoing reasons, Osden's qualified immunity defense is premature and must be dismissed at this stage of the proceeding.

B. <u>First Amendment Claim</u>

Osden alternatively argues that the plaintiff's First Amendment claim should be dismissed because the plaintiff has not alleged any connection between Osden and the retaliatory action that was taken against the plaintiff for voicing his concerns about being able to speak Spanish. MTD at 7. Although the Court in its Initial Review Order ruled that the plaintiff had stated a plausible First

Amendment retaliation claim against Osden and the New Hampshire correctional staff for punishing him in response to voicing his concerns about the prohibition on freely speaking Spanish, upon further review, this Court agrees with Osden that this claim was only directed at the New Hampshire correctional staff and not at Osden, an employee of the Connecticut Department of Correction.

The facts that gave rise to the First Amendment retaliation claim took place in December of 2014 while the plaintiff was incarcerated at the New Hampshire State Prison for Men in Concord, New Hampshire. Plaintiff's Complaint [No. 1] ("Pl.'s Cmp.) ¶¶ 17-18. According to the plaintiff, an individual identified only as "Ms. Toth," who was presumably an employee of the New Hampshire correctional staff, "reprimanded the plaintiff for speaking Spanish outside of a group meeting," which led to an argument between Ms. Toth and the plaintiff. *Id.* at ¶ 17. When the plaintiff wrote a request to Ms. Toth regarding the incident, the plaintiff was transferred to the Northern New Hampshire Correctional Institution in Berlin, New Hampshire. *Id.* at ¶¶ 17-18. The plaintiff does not explain in his complaint how, if at all, Osden, a counselor at the Connecticut Department of Correction, was involved in the December 2014 incident or the decision to transfer the plaintiff to another facility in New Hampshire. While the complaint does allege that Osden conveyed policies to Plaintiff, it does not allege that she had any personal involvement in the decision making process applying such policies. "It is well settled . . . that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of*

*Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (prisoner's § 1983 claim against warden not cognizable absent allegation that warden was personally involved in or had direct responsibility for prisoner's injuries). It appears from the factual allegations that only members of the New Hampshire correctional staff were involved in the decision to transfer the plaintiff after he had voiced his concerns about being able to speak Spanish. Construing the facts alleged in the complaint as true, the First Amendment claim against Osden has no facial plausibility. This Court cannot reasonably infer from the facts of the complaint that Osden personally played any role in, and therefore could conceivably be liable for, the retaliatory action alleged. *See Ashcroft*, 556 U.S. at 678-679. Therefore, the plaintiff's First Amendment claim against Osden is hereby dismissed.[2]

    C. <u>Eighth Amendment Claim</u>

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). Prison officials are liable for harm incurred by the inmate under 42 U.S.C. § 1983 if the officials acted with "deliberate indifference" to the inmate's safety. *Id.* To establish a claim of "deliberate indifference," the inmate must demonstrate that (1) "he is

---

[2] The fact that this Court previously ruled that the plaintiff stated a plausible First Amendment claim against Osden has no bearing on its current decision to dismiss the claim. *See Garewal v. Sliz*, 611 F. App'x 926, 931 (10th Cir. 2015) (fact that district court does not dismiss complaint under 28 U.S.C. § 1915A does not mean that complaint will withstand Rule 12(b)(6) challenge); *Buchheit v. Green*, 705 F.3d 1157, 1161 (10th Cir. 2012) (dismissing complaint without adversarial presentation often difficult and time-consuming task).

11

incarcerated under conditions posing a substantial risk of serious harm;" and (2) "the defendant prison official[] possessed sufficient culpable intent." *Id.* "[A] prison official has sufficient culpable intent if [s]he as knowledge that an inmate faces a substantial risk of serious harm and [s]he disregards that risk by failing to take reasonable measures to abate the harm." *Id.* The official must have actual knowledge of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994).

In its Initial Review Order, this Court concluded that the plaintiff had stated a plausible deliberate indifference claim against Osden. IRO at 12. Osden now challenges that conclusion, arguing that the facts alleged in the complaint do not show that she had any prior knowledge of information from which a reasonable inference could be drawn that the plaintiff was exposed to a substantial risk of serious harm. MTD at 13-14. Specifically, Osden argues that, prior to the alleged head injury or bathroom assault, she had no knowledge that the plaintiff was threatened or was somehow exposed to imminent harm, and the complaint failed to allege such knowledge. *Id.* Moreover, Osden asserts that the plaintiff never reported the alleged bathroom assault, that Osden does not have control over inmate safety protocol in any Connecticut or New Hampshire correctional facilities, and that the plaintiff did not allege any facts showing a pervasive or well-documented history of inmate assaults in the facilities in which he was housed. *Id.* *See Farmer*, 511 U.S. at 842-43. This Court disagrees.

The plaintiff's complaint alleges a plausible claim that Osden acted with deliberate indifference to a substantial risk of serious harm. The plaintiff alleged that between February and May of 2015, he wrote numerous letters to Osden voicing concerns he had over his safety after having recently renounced his membership in the *Neta* prison gang and that he wished to be returned to a facility in Connecticut. Pl.'s Compl. ¶¶ 20-23. He also alleged that he informed Osden about the first attack during which he incurred a cut to the back of his head, again requesting a transfer back to Connecticut, and that such request was denied. *Id.* at ¶ 25. Shortly thereafter, the plaintiff was allegedly assaulted in the bathroom of his unit. *Id.* at ¶ 26. Contrary to Osden's argument, the plaintiff did in fact allege that he reported the bathroom assault to correctional staff but that no investigation was performed. *Id.* at ¶ 27. Despite informing Osden of both incidents, Osden denied the plaintiff's requests to be transferred back to a Connecticut facility, explaining that the cut to the back of his head "was deemed superficial" and no investigation was conducted into the alleged bathroom assault. *Id.* at ¶¶ 31-32. "Whether a prison official had the requisite knowledge of a substantial risk [of serious harm] is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Farmer*, 511 U.S. at 842. Thus, the plaintiff plausibly alleges that Osden knew prior to the assaults that the plaintiff faced a substantial risk of serious harm and failed to protect him from the ensuing attack.

Osden's argument that she had no control over inmate safety measures in Connecticut or New Hampshire correctional facilities does not suffice to dismiss

the plaintiff's Eighth Amendment claim at this juncture. Although Osden correctly asserts that the plaintiff has not alleged how, if at all, Osden was responsible for, or involved in, the decisions of the New Hampshire correctional staff with respect to protective custody placement, the plaintiff sufficiently alleged that Osden repeatedly denied requests to transfer the plaintiff back to Connecticut, despite the plaintiff's expressed concerns that his safety was in jeopardy. Construing the complaint liberally and accepting all facts as true, the *pro se* plaintiff has stated a plausible claim of deliberate indifference to harm under the Eighth Amendment.

    D. <u>Claims for Injunctive Relief</u>

Osden argues that the plaintiff's claims against Osden for injunctive relief are moot because he has since been transferred back to a correctional facility in Connecticut and, therefore, removed from the conditions of confinement of which he bases his Eighth Amendment claim. This Court agrees and hereby dismisses the plaintiff's request for injunctive relief for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

The events upon which the plaintiff bases his Eighth Amendment claim occurred while the plaintiff was in the custody of the New Hampshire Department of Corrections. The plaintiff alleges that, following those events but before the commencement of this proceeding, he was returned to Connecticut, specifically Garner Correctional Institution in Newtown, Connecticut. Pl.'s Compl. ¶ 55. In his prayer for relief, the plaintiff seeks an order from this Court that he be transferred to either Brooklyn Correctional Institution or Enfield Correctional Institution, both

of which are located in Connecticut. *Id.* at p.9. The plaintiff has not cited any authority or provided any reasons why he is entitled to be transferred to the facility of his choosing.

Nevertheless, the removal of a prisoner from the facility where the harm allegedly occurred sufficiently renders moot a claims for injunctive relief. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (transfer from prison facility moots action for injunctive relief against transferring facility). The Court recognizes that an exception exists where the plaintiff's claim is "capable of repetition, yet evading review." *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988). However, in this case, the plaintiff has not explained how, if at all, his current facility exposes him to unconstitutional harm and that a transfer to Brooklyn Correctional Institution or Enfield Correctional Institution is necessary to avoid future harm. Therefore, the plaintiff's claims for injunctive relief against Osden are hereby dismissed.

IV. <u>ORDERS</u>

The plaintiff's First Amendment claim against Osden is hereby DISMISSED. The plaintiff's Eighth Amendment claim shall proceed against Osden, as it is fact-dependent and may only be addressed on a motion for summary judgment. The plaintiff's claims for injunctive relief are DISMISSED.

SO ORDERED at Hartford, Connecticut this 31st day of July, 2017.

                                                      /s/
                                      VANESSA L. BRYANT
                                      UNITED STATES DISTRICT JUDGE